**Geraldine RUBIN, Plaintiff,**

v.

**LONG ISLAND LIGHTING COMPANY, et al., Defendants.**

**No. 83 Civ. 0809.**

United States District Court, E.D. New York.

Jan. 5, 1984.

**1.** Section 11(a) of the Securities Act of 1933 provides in pertinent part:

In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue....

15 U.S.C. § 77k(a).

Avrom S. Fischer, Brooklyn, N.Y., for plaintiff.

Edward M. Barrett, Mineola, N.Y. (Rosalind M. Gordon, Mineola, N.Y., of counsel), for defendant Long Island Lighting Co.

Milbank, Tweed, Hadley & McCloy, New York City (Russell E. Brooks, Charles E. Dropkin, Robert A. Banner, New York City, of counsel), for underwriter-defendants.

BARTELS, District Judge.

Plaintiff Geraldine Rubin brought this class action charging Long Island Lighting Company ("LILCO") with violations of § 11(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77k(a),[1] and § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 promulgated thereunder, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5,[2] in connection with

**2.** Section 10 of the Securities Exchange Act of 1934 provides in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

· · · · ·

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Com-

its offering and sale of three million shares of Series T preferred stock in September, 1980. The remaining ninety-five defendants compose an underwriting group of which defendant Bache Halsey Stuart Shields Inc. acted as managing underwriter for the preferred stock offering. The alleged violations consist of omissions of material facts required to make statements in the prospectus not misleading. Defendants move to dismiss the complaint for various reasons including the defense under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

I

Plaintiff alleges that she purchased 200 shares of the Series T preferred stock from the initial offering in September, 1980, "in reliance upon the Prospectus and subsequently sold said shares at a loss." (Amended Complaint ¶ 38.) Nowhere does plaintiff disclose the date of sale or the amount of loss; the court can only note that she commenced this action on March 4, 1983. On page nine of the prospectus filed by LILCO with the Securities and Exchange Commission ("SEC") as part of its registration statement, under the heading "Tax Status," there appeared the following paragraph which is the focal point of the alleged misrepresentation:

A preliminary estimate by [LILCO] indicates that a substantial portion of the Preferred Stock dividends to be paid in 1980 may represent return of capital for tax purposes and therefore will not be subject to federal income tax as ordinary income, but will be considered a return of capital, thereby reducing the tax basis of the applicable shares by such amount. In 1979, 63 percent of the dividends paid

by [LILCO] on Preferred Stock were considered to be a return of capital. This was the first year in which [any portion of the] dividends paid on Preferred Stock was not taxed as ordinary income.

Amended Complaint ¶ 16.

The statements regarding tax treatment of 1979 preferred stock dividends were correct. LILCO's prediction as to tax treatment of preferred dividends paid in 1980 proved to be accurate and, indeed, conservative. In January, 1981, LILCO advised its preferred stockholders that 100% of preferred dividends paid in 1980 would be considered as a return of capital for tax purposes. (Affidavit of Steven J. Lanzola of recordkeeping agent for LILCO's transfer agent, Exh. A.) The amended complaint makes no mention of this fact.

Preferred dividends paid in the following two years, however, received less advantageous tax treatment. All preferred dividends paid in 1981 received ordinary income treatment for tax purposes. (Amended Complaint ¶ 21). In early 1983 LILCO advised its preferred stockholders that 81% of the preferred dividends paid in 1982 would be treated as return of capital. (Affidavit of Spencer E. Hughes, Jr. of LILCO's Investor Relations Department ¶ 2.) Once again, plaintiff's amended complaint omits this latter fact. Plaintiff does not claim that such dividends could not or did not constitute a return of capital. Rather, plaintiff, as best as can be ascertained from the lengthy, ambiguous, and inartfully-drawn complaint, alleges that the prospectus was deceptive in two respects.

The first of plaintiff's two claims (alleged more explicitly in the original complaint)[3]

mission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b).
Rule 10b–5 provides in pertinent part:
  It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
  . . . .

  (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, . . . .
17 C.F.R. § 240.10b–5.

**3.** Plaintiff in her original complaint unequivocably claimed that the prospectus misled investors into believing that preferred dividends to be paid in years after 1980 would receive return-of-

is that the "Tax Status" paragraph quoted above misled the investing public into believing that preferred dividends to be paid in years after 1980 would be treated as return of capital for tax purposes. (Amended Complaint ¶¶ 17, 19–21, 26–28, 30, 31, 32(f) and (g), 35(f) and (g)). Plaintiff alleges, again and again, that defendants accomplished this deception by omitting from the prospectus what in summary are: (1) earnings and profits of LILCO accumulated between 1913 and 1979 for dividend purposes under § 316 of the Internal Revenue Code,[4] (2) earnings and profits of LILCO in the years 1979 and 1980 for dividend purposes under § 316 of the Internal Revenue Code, (3) an explanation of the effects of the above on tax treatment of preferred dividends paid in 1979 and 1980, and (4) whether the circumstances were non-recurring which led to tax treatment of preferred dividends paid in 1979 and 1980 as return of capital. (Amended Complaint ¶¶ 20, 22–32, 35.)[5] From the tedious details elaborated in the complaint relating to the above items, one can only gather that the plaintiff is claiming that she was injured because the Series T preferred stock dividends paid by LILCO in 1981 received tax treatment as ordinary income while she expected return of capital treatment.

Plaintiff's second claim for recovery is also based on defendants' omission of the above four categories of information relating to the tax treatment of 1979 and 1980 dividends as return of capital. . Plaintiff adds, however, that the omissions were material and necessary to make the statements in the prospectus not misleading because had this information been disclosed, LILCO would have been forced to either offer a greater yield or lower the stock's offering price. (Amended Complaint ¶¶ 18–20, 33, 37, 39.) The omission of this information, plaintiff alleges, affected her decision as an investor in purchasing the Series T preferred stock at a given price. Under either theory the essence of plaintiff's claims is that the defendants failed to disclose material information which would have enabled plaintiff to better assess the likelihood that preferred dividends to be paid in the future would be treated as return of capital for tax purposes or to assess the value of the stock.

## II

Defendants assert several grounds in support of their motion to dismiss the amended complaint. First, they attack

---

capital treatment. In ¶ 23 of the original complaint, for instance, plaintiff alleged:

> The failure to disclose the omitted information led the plaintiff and the other members of the investing public to assume that in future years there was a strong probability that a significant portion, if not all of the dividends, to be paid on the Series T Preferred Stock would be treated for tax purposes as return of capital and thus that the price at which the Series T Preferred Stock was being sold was unusually attractive in light of other investment opportunities available.

This paragraph does not appear in haec verba in the amended complaint.

4. The tax treatment of corporate distributions to shareholders is governed by §§ 301 and 316 of the Internal Revenue Code. Section 301(c) provides that the distributee must include in gross income that portion of the distribution which is a dividend as defined in § 316. Any portion of the distribution which is not a dividend as defined in § 316 is not includable in gross income and must be applied against and reduce the stock's adjusted basis. Section 316 defines

"dividend" as any distribution out of either earnings and profits accumulated after February 28, 1913, or earnings and profits of the taxable year. Section 316 also provides that, except as otherwise provided, "every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits." See 1 J. Mertens, Law of Federal Income Taxation §§ 9.24–.28 (revised ed. 1981). As stated in Estate of Uris v. C.I.R., 605 F.2d 1258, 1265 (2d Cir.1979), "'earnings and profits,' a statutory concept, bears no exact relation either to taxable income or to earnings as determined by 'corporate accounting concepts' in the given context."

5. It should be noted that on page 2 of the prospectus LILCO incorporated by reference financial reports required to be filed with the SEC for 1979 and 1980, and on page 3 provided financial information including LILCO's revenues and net income for the 12 months ended July 31, 1980 and December 31, 1979. (Affidavit of Rosalind M. Gordon, Senior Attorney for LILCO, Exh. A.)

plaintiff's § 10(b) claim for failing to allege fraud and scienter with particularity, Fed. R.Civ.P. 9(b), and failing to allege how the claimed omissions proximately caused plaintiff's undisclosed loss. Second, defendants seek summary judgment on plaintiff's § 11 claim on the ground that it is time-barred pursuant to the one-year limitations period provided for in § 13 of the Securities Act, 15 U.S.C. § 77m. Finally, defendants seek dismissal of the entire amended complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted under either § 11(a) or § 10(b). In essence, defendants argue that as a matter of law the challenged "Tax Status" paragraph in the prospectus contained no misleading statements or omitted material facts necessary to render the statements made not misleading. Because we agree that dismissal is warranted under Rule 12(b)(6), we need not reach defendants' other contentions.[6]

When considering claims of material omissions under § 11(a) of the Securities Act and § 10(b) of the Exchange Act, there is no question that they stand or fall together for the simple reason that both provisions impose liability for material omissions in virtually identical language. *See Parsons v. Hornblower & Weeks-Hemphill, Noyes*, 447 F.Supp. 482, 489 & n. 13 (M.D.N.C.1977), *aff'd*, 571 F.2d 203 (4th Cir.1978).[7] Both § 11(a) and § 10(b) require the plaintiff to allege and prove that the registration statement or prospectus contained a material misstatement or, as is alleged here, omitted to state a material fact necessary to make the statements made not misleading. "In short, an omission is not actionable unless it is a material fact that is omitted and unless that material fact adversely affects the reliability of other statements." *Parsons*, 447 F.Supp. at 489. "A fact is material if there is a. substantial likelihood that, under all the circumstances, a reasonable investor would consider it important in reaching an investment decision." *Greenapple v. Detroit Edison Co.*, 468 F.Supp. 702, 708 (S.D.N.Y. 1979), *aff'd*, 618 F.2d 198 (2d Cir.1980); *see TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *see generally* L. Loss, *"Fraud" and Civil Liability Under the Federal Securities Laws* 39–40, 56–58 (Report to the Federal Judicial Center, Aug. 1983).

A.

■ Plaintiff's first theory of recovery can only be described as frivolous. Of the three sentences contained in the "Tax Status" paragraph, the latter two merely state the uncontested fact that in 1979, 63% of preferred stock dividends were treated as a return of capital and this was the first year for such treatment. The first sentence indeed predicts, as a "preliminary estimate," that a "substantial portion" of *1980* dividends will receive return of capital treatment. Nonetheless, it is unreasonable for an investor to draw from those three sen-

6. Without deciding the issue, we note that defendants' statute of limitations argument clearly has merit. The one-year (from discovery) period provided for in § 13 of the Securities Act, 15 U.S.C. § 77m, began running, at the very latest, in January of 1982 when LILCO announced that 1981 dividends would receive ordinary income treatment. Plaintiff commenced this action in March of 1983. She argues that she discovered the alleged omissions "[b]y reason of the failure of LILCO to answer plaintiff's inquiries" by letters dated April 28th, June 4th and 16th, and July 14th of 1982. (Amended Complaint ¶ 41.) The letters referred to are from plaintiff's counsel to LILCO's Chairman of the Board in which counsel made virtually the same allegations as those in the complaint. *See* Affidavit of Rosalind M. Gordon, Senior Attorney for LILCO, Exhs. B through J. If anything, the correspon-

dence serves to support the conclusion that the statute began to run no later than January, 1982. *See infra* note 10.

7. That is not to say that both provisions impose liability under identical circumstances because under § 10(b) and Rule 10b–5 a showing of scienter is required while under § 11 scienter need not be established. *Elfenbein v. American Financial Corp.*, 487 F.Supp. 619, 626 (S.D.N.Y. 1980), *aff'd*, 652 F.2d 53 (2d Cir.1981); *see Herman & MacLean v. Huddleston*, — U.S. —, 103 S.Ct. 683, 688, 74 L.Ed.2d 548 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976); *Feit v. Leasco Data Processing Equipment Corp.*, 332 F.Supp. 544, 575 (E.D.N.Y.1971).

tences any inference whatsoever concerning tax treatment of dividends paid in 1981 and onward. Since no post-1980 prediction was made, it is useless to discuss material omissions bearing on a non-existent prediction.[8]

### B.

Plaintiff's second theory of recovery is no more substantial than her first. For purposes of discussion, the material omissions alleged under the second theory fall into two categories: (1) the omission of data, formulae, and explanations which would have revealed how LILCO determined tax treatment under § 316 of the Internal Revenue Code of 1979 and 1980 dividends and (2) the omission of a prediction by way of characterizing as "non-recurring" the circumstances underlying 1979 and 1980 tax treatment of dividends.

Nothing in the federal securities laws required the defendants to include in the prospectus details of the computation of the earnings and profits data or the details of the accounting principles employed by LILCO in determining tax treatment of dividends paid in those two years. The resulting fact is material, not the computation by which the result was obtained, and not the manner in which LILCO complied with § 316 of the Internal Revenue Code in the payment of its dividends. The omitted facts alleged in the amended complaint are not facts which a reasonable investor would consider important or relevant in making his decision to purchase the preferred stock. A closely analogous case is *Greenapple v. Detroit Edison Co., supra,* where plaintiff sued a utility for not explaining in the prospectus to plaintiff's satisfaction that allowance for funds used during construction ("AFDC") represents a capitalized cost item rather than cash reve-

nue. The district court granted summary judgment for the defendant, stating:

> Plaintiff's arguments amount to little more than piecemeal attacks on individual terms and entries in the defendant's prospectus coupled with assertions that they do not explain all that plaintiff might have wanted to know about AFDC. The securities laws, however, do not require that an issuer include an in-depth explanation of widely-used accounting terms and principles every time it disseminates a financial statement employing such terms and principles to the investing public.

468 F.Supp. at 711–12. Upon affirmance in *Greenapple* the Second Circuit stated:

> To demand more [disclosure] would open the door to unceasing and unreasonable clamorings for all manner of tutoring in basic corporate accounting, which would afford a bonanza to lawyers and regulators with no corresponding benefit to the actual investor.

618 F.2d at 211.

Similarly, in *Freedman v. Barrow,* 427 F.Supp. 1129 (S.D.N.Y.1976), plaintiff charged that defendant violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), by omitting from a proxy statement an explanation of differences in accounting treatment of stock options for employees under an existing plan versus stock appreciation rights ("SARs") under a proposed plan. Plaintiff alleged that this omission made the proxy statement materially misleading because issuance of SARs would require a charge against corporate earnings not required under the existing stock option plan. The proxy statement did include a summary outline and description of the different tax consequences, to the corporation and employees, in connection with both the existing and proposed plans. The court held

---

**8.** Plaintiff complains that a prediction was made with respect to the treatment of dividends to be paid after 1980. While we find no basis for this claim, the "safe-harbor" rule promulgated by the SEC, 17 C.F.R. § 230.175, would be applicable if anything the defendants stated could be construed as a prediction. Rule 175, enacted under the Securities Act of 1933 and effective July 30, 1979, furnishes immunity from liability under the Securities Act and the Exchange Act for good faith, voluntary disclosures "containing a projection of revenues, income (loss), earnings (loss) per share, capital expenditures, dividends, capital structure or other financial items...." *Id.* § 230.175(c)(1).

that the disclosure sought by plaintiff "was not necessary in order to make the statements which were made not false or misleading.... [T]he provisions in the Proxy Statement discussing the tax consequences stand by themselves and are truthful and complete. They need not be supplemented by any lengthy discussion of the proper accounting treatment for options and SARs." *Id.* at 1139. To the same effect is *Walpert v. Bart*, 280 F.Supp. 1006 (D.Md. 1967), *aff'd*, 390 F.2d 877 (4th Cir.1968), where the court held that there was no material omission in a proxy statement which set forth the repurchase price of stock in a recommended stock-for-stock exchange without disclosing the repurchase formula.

A compelling policy underlies these decisions: the goals of full disclosure and fair dealing embodied by the securities laws are not furthered by requiring issuers and proxy solicitors to inundate the investing public with reams of raw data and formulae digestible by few and useful to even fewer. Confusion, rather than informed decisionmaking, would result were such required. As Judge Friendly stated in a case involving disclosure required by section 14(d), (e) and (f) of the Exchange Act dealing with tender offers, "Congress intended to assure basic honesty and fair dealing, not to impose an unrealistic requirement of laboratory conditions...." *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 948 (2d Cir.1969). Likewise, the district court in *Freedman v. Barrow* wrote:

> Perhaps in a different world a detailed description of hundreds of pages setting forth all the accounting ramifications of options and stock appreciation rights would be desirable for whatever edification the average shareholder could derive. Whatever the relative merits of such a costly work, the law does not require it. Such in-depth treatment would take more than a few pages, and few but accountants, lawyers and financial analysts could comprehend it.

427 F.Supp. at 1140. *See also Richland v. Crandall*, 262 F.Supp. 538, 553 (S.D.N.Y. 1967).

Having determined that defendants were not required to disclose the underlying data and method by which LILCO determined tax treatment of 1979 and 1980 dividends, the only remaining contention under plaintiff's second theory is that defendants omitted to characterize as non-recurring the circumstances underlying those tax determinations. Thus, this aspect of plaintiff's second theory is paradoxical and inconsistent with her first theory because in the first she complains of the inaccuracy of an implied prediction of recurring capital treatment of preferred stock dividends, while in the second she complains of a lack of a prediction characterizing as non-recurring the return of capital treatment of 1979 and 1980 dividends.

Under the authorities it is clear that SEC registrants are under no duty to make speculative projections of financial or economic events to satisfy the curiosity of an investor as to immaterial matters. *E.g., Arber v. Essex Wire Corp.*, 490 F.2d 414, 421 (6th Cir.), *cert. denied*, 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 56 (1974); *Dower v. Mosser Industries*, 488 F.Supp. 1328, 1338 (E.D.Pa.1980), *aff'd*, 648 F.2d 183 (3d Cir. 1981); *Lessler v. Dominion Textile Ltd.*, 411 F.Supp. 40, 42 (S.D.N.Y.1975). There is even a greater imperative for not imposing such a duty in the complex tax area. *Guarantee Insurance Agency Co. v. Mid-Continental Realty Corp.*, 414 F.Supp. 1331, 1334 (N.D.Ill.1976), *aff'd*, 559 F.2d 1226 (7th Cir.1977). The omitted characterization sought by plaintiff calls for exactly such speculation and consequently its absence did not amount to a material omission under the applicable securities laws. To the contrary, all the facts indicate that defendants might have incurred liability had they made such a characterization or prediction.

## III.

Defendants also move for reimbursement of their costs and attorneys'

fees pursuant to § 11(e) of the Securities Act, 15 U.S.C. § 77k(e). Section 11(e) provides, in relevant part,

> In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

In this circuit, a finding that a suit or defense is meritless for purposes of § 11(e) requires a finding "that the claim borders on the frivolous or has been brought in bad faith." *Aid Auto Stores, Inc. v. Cannon*, 525 F.2d 468, 471 (2d Cir.1975); *Klein v. Shields & Co.*, 470 F.2d 1344, 1347 (2d Cir.1972); *see* Annot., 23 A.L.R.Fed. 983 (1975). Section 11(e) was designed by Congress as a deterrent to "strike suits." 3 L.

Loss, *Securities Regulation* 1837 (2d ed. 1961). A court should hesitate before imposing attorneys' fees authorized under the Securities Act for fear of intimidating or discouraging litigation that has some reasonable basis although ultimately unsuccessful. But a line must be drawn somewhere. In this case the claims have no apparent legal basis and were brought by an attorney with considerable experience with securities litigation.[9] The court does not find that this suit was brought in bad faith. The court does, however, find that the claims presented in the original complaint were frivolous. The sole ascertainable theory of recovery in the original complaint was plaintiff's unreasonable charge that the "Tax Status" paragraph had misled investors to believe that post-1980 dividends would receive treatment as return of capital for tax purposes. The correspondence between plaintiff's counsel and LILCO prior to commencement of suit supports this view.[10]

Faced with defendants' motion to dismiss the original complaint, counsel redrafted the complaint in a futile effort to overcome the deficiencies raised by defendants' motion papers.[11] The amended complaint re-

---

**9.** A computer-assisted survey of suits brought in the Southern and Eastern Districts of New York, which only covered reported cases, indicated counsel's representation of plaintiffs in at least a dozen securities cases since 1970.

**10.** Not long after LILCO informed holders of Series T preferred stock that none of the dividends paid in 1981 were eligible for treatment as return of capital, plaintiff's counsel, Avrom Fischer, wrote a letter to Charles R. Pierce, LILCO's Chairman of the Board, in which he quoted the "Tax Status" paragraph and informed Pierce that plaintiff Rubin had retained Fischer "to consider whether the prospectus for the Series T Preferred ·stock was misleading." The letter noted that no 1981 dividends were eligible for treatment as return of capital, and essentially charged LILCO with omitting any "explanation or discussion" in connection with 1979 and 1980 tax treatment of dividends upon which an investor could independently evaluate whether post-1980 dividends would receive the same, favorable tax treatment. Over the following four months, Fischer wrote three more letters to Pierce, each one essentially asking LILCO to admit that the information contained in

the prospectus was inadequate for an investor to evaluate (1) how LILCO arrived at determination of 1979 and 1980 tax treatment of preferred dividends, and (2) whether the circumstances were "unique or nonrecurring." Counsel for LILCO responded twice to these additional inquiries from Fischer, both times repeating LILCO's position that it had not omitted from the prospectus any material information. Fischer's latter two letters seized upon these general denials of wrongdoing as evidence that LILCO had failed to disclose information in its possession which would have enabled plaintiff to make the above-described evaluations.

**11.** Rather than opposing defendants' motion, on June 3, 1983, plaintiff filed an amended complaint. The amended complaint carried over the original theory of liability in a somewhat weakened form and added a second theory of recovery. Defendants thereafter renewed their motion to dismiss and filed supplemental papers addressing the new points raised by the amended complaint. In response, plaintiff's counsel submitted his own affidavit and a memorandum of law. The memorandum did not discuss or cite a single case on the issue of

tained plaintiff's theory in the original complaint and added a second one, heretofore discussed, which had as little basis in law as plaintiff's first theory had basis in fact. To borrow the language of Fed.R.Civ.P. 11, plaintiff's claims under her second theory were not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Therefore, the court finds that plaintiff's claims in the complaint and amended complaint are frivolous. *See Shaw v. Merritt-Chapman & Scott Corp.,* 554 F.2d 786 (6th Cir.), *cert. denied,* 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977); *Miller v. Schweickart,* 413 F.Supp. 1059 (S.D.N.Y.1976).

■ Accordingly, the court grants defendants' motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) and further grants defendants' motion for reasonable attorneys' fees pursuant to § 11(e) of the Securities Act, the amount of the award to be determined upon subsequent application. Liability for the fee award shall be imposed jointly and severally upon plaintiff and her attorney.[12]

SO ORDERED.

---

whether the amended complaint stated claims for which relief could be granted under the securities laws.

**12.** Plaintiff's pleading deficiencies cannot be attributed to inexperience on counsel's part, *see*

*supra* note 9. That this suit was brought as a class action is indicative of counsel's role in instituting this suit. Consequently, we believe that he should share the responsibility for moderate attorneys' fees incurred in defending this suit which never should have been brought.