[No. A028551. First Dist., Div. Three. July 24, 1986.]

INSURANCE UNDERWRITERS CLEARING HOUSE, INC., et al., Plaintiffs and Appellants, v.
NATOMAS COMPANY et al., Defendants and Respondents.

**COUNSEL**

David B. Gold, Paul F. Bennett, Solomon B. Cera, Barrack, Rodos & Bacine, Leonard Barrack and Gerald Rodos for Plaintiffs and Appellants.

David G. Robertson, Vincent J. Chiarello, Morrison & Foerster, James K. Haynes, Ronald Hayes Malone, Barbara Moses, Orrick, Herrington & Sutcliffe, Pillsbury, Madison & Sutro, William I. Edlund, Walter R. Allan, John F. McLean, Kevin M. Fong, Jay R. Martin, Eric G. Wallis, Allison Hightower, Crosby, Heafey, Roach & May, William B. Campbell, Todd E. Gordinier and Paul, Hastings, Janofsky & Walker for Defendants and Respondents.

## OPINION

**SCOTT, J.**—Kirschner Brothers Oil, Inc., among others (the Kirschner plaintiffs)[1] and Insurance Underwriters Clearing House, Inc. (Insurance Underwriters), filed an action against numerous defendants alleging negligent misrepresentation and violations of the federal Securities Act of 1933 and the California Corporations Code, all in conjunction with the sale of certain stock. Defendants' demurrers were sustained, an order dismissing the action was entered, and this appeal followed.[2] We affirm.

I

In November 1980, defendant Natomas Company (Natomas), a California corporation, offered 2.5 million shares of preferred stock pursuant to a registration statement and prospectus filed with the Securities and Exchange Commission. In 1980 and 1981, plaintiff Insurance Underwriters purchased 1,000 of those shares.

On May 23, 1983, Diamond Shamrock Corporation (Diamond Shamrock), through a wholly owned subsidiary, commenced a tender offer for Natomas common stock and stated its intention to propose a merger between Natomas and the subsidiary. On May 24, 1983, the Kirschner plaintiffs bought 6,000 Natomas preferred shares.

Shortly thereafter, the boards of Diamond Shamrock and Natomas approved a plan and agreement of reorganization between the two companies, and the tender offer was terminated. According to the plan, a new holding company, New Diamond, was to be formed, which in turn would form two wholly owned subsidiaries, D Sub and N Sub. One of these subsidiaries was to be merged into Diamond Shamrock and the other into Natomas. As a result, Diamond Shamrock and Natomas would become subsidiaries of New Diamond.

The agreement was to be submitted to the holders of shares of Natomas common and preferred stock, voting as separate classes. Upon the approval

---

[1]The Kirschner plaintiffs also include Kirschner Brothers of New Jersey Pension Plan, Kirschner Brothers Oil Company Pension Plan, Kirschner Brothers Oil Company Profit Sharing Plan and Kirschner Brothers of New Jersey Profit Sharing Plan.

[2]The record in this case consists of an appellants' appendix and a respondents' appendix. Included in the record are documents filed in a related action, Kirschner Brothers Oil, Inc., et al. v. Natomas Co. et al. (Super. Ct. San Francisco City & County, No. 811435). An appeal in that action is currently pending before this court. (A030416) This court may take judicial notice of the files in that action. (See Evid. Code, §§ 452, subd. (d), 459, subd. (a); *Saltares* v. *Kristovich* (1970) 6 Cal.App.3d 504, 511 [85 Cal.Rptr. 866].)

of both classes of shareholders, the Natomas common stock would be converted into New Diamond common stock and the Natomas preferred stock into New Diamond preferred, convertible into New Diamond common. Failure to obtain approval by the Natomas preferred shareholders would not prevent consummation of the merger. If a majority of the Natomas common shareholders approved the agreement but its preferred shareholders did not, the Natomas common shares would be converted into New Diamond common, whereas the Natomas preferred would remain outstanding and continue to be convertible into Natomas common.

On July 8, 1983, the Kirschner plaintiffs filed an action in San Francisco Superior Court seeking an order enjoining the proposed reorganization, in part on the ground that approval by a majority of the preferred shareholders was required by Corporations Code section 1201.[3] Their action was apparently consolidated with other actions also seeking a similar injunction. On August 1, 1983, the trial court denied a preliminary injunction. The court characterized the proposed merger as a " 'double reverse' (or 'phantom') triangular merger." It reasoned in part that the approval of such a merger by the preferred shareholders was not required by the Corporations Code because Natomas would be a "surviving corporation" in the transaction within the meaning of the statutory exception to the requirement of a class vote.[4] For a more detailed explanation of the court's ruling, see 2 Marsh's California Corporation Law (2d ed., 1985 supp.) section 18.20, pages 516-518.2.

Shortly thereafter, the Kirschner plaintiffs and Insurance Underwriters filed this action for damages against Natomas and numerous other defendants. The complaint alleged in several causes of action that the 1980 registration statement and prospectus offering Natomas preferred shares omitted to state and/or misrepresented material facts with respect to the preferred shareholders' voting rights and conversion privileges.

Among the specific allegations of the complaint were the failure to disclose (1) "that the voting rights accorded to Preferred Shareholders under Cali-

---

[3]California law does not provide preferred shareholders with an absolute right to vote on reorganizations. Corporations Code section 1201, subdivision (a), provides in relevant part: "The principal terms of a reorganization shall be approved by the outstanding shares (Section 152) of each class of each corporation the approval of whose board is required . . . *except that* (unless otherwise provided in the articles) *no approval of any class of outstanding preferred shares of the surviving . . . corporation . . . shall be required if the rights, preferences, privileges and restrictions granted to or imposed upon such class of shares remain unchanged . . . .*" (Italics added.)

[4]On August 10, 1984, summary judgment for defendants was granted in that action. Plaintiffs have appealed, and that appeal is currently pending before this court.

fornia Corporations Code § 1201(a) could be abrogated unilaterally by the Natomas Board of Directors if the Directors chose to combine Natomas with any other company by means of a 'reverse triangular merger'"; and (2) that "the Natomas Board of Directors could unilaterally cause the delisting of all of the outstanding shares of Natomas Common Stock from the public exchanges . . .," thereby destroying "the economic value of the conversion right held by purchasers of Natomas Preferred Shares . . . ."

Among those named as defendants were Natomas, the members of its board of directors, the holding company New Diamond (subsequently re-named Diamond Shamrock), and various underwriters. All defendants de-murred on several grounds, among them that the complaint did not constitute a cause of action because the alleged omissions were not material, and that certain of the causes of action were barred by the statutes of limitations. In March 1984, the trial court sustained the demurrers, with leave to amend, on the ground that the complaint failed to state facts sufficient to constitute any cause of action. In its order, the court explained its ruling: "The assertedly misleading omissions referred to in paragraph 40 [of the com-plaint] which are central to each of plaintiffs' causes of action, are no more than inaccurate characterizations by the plaintiffs of the law . . . . Alter-natively, any possible omission in this regard related to a matter that was then highly speculative and therefore cannot, under the circumstances, be deemed material. . . ." After plaintiffs declined to amend, the action was dismissed, and this appeal followed.

## II

Plaintiffs contend that their complaint alleges actionable misrepresentations and omissions, and that the trial court improperly re-solved factual issues when it concluded that the complaint failed to state any cause of action.

For purposes of this appeal, this court must treat as true all material facts properly pled in the complaint. (*Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 722 [209 Cal.Rptr. 347, 691 P.2d 1013].) However, the complaint may be read as if it included matters which may be judicially noticed. (*El Rancho Unified School Dist.* v. *National Education Assn.* (1983) 33 Cal.3d 946, 950, fn. 6 [192 Cal.Rptr. 123, 663 P.2d 893]; *Childs* v. *State of California* (1983) 144 Cal.App.3d 155, 162 [192 Cal.Rptr. 526].) Fur-thermore, a demurrer does not admit as true contentions or conclusions of law alleged in the complaint. (*Pan Pacific Properties, Inc.* v. *County of Santa Cruz* (1978) 81 Cal.App.3d 244, 251 [146 Cal.Rptr. 428]; *Shuffer* v. *Board of Trustees* (1977) 67 Cal.App.3d 208, 218 [136 Cal.Rptr. 527].)

As plaintiffs recognize, all their causes of action require allegations of misrepresentations or omissions which are misleading and material. In three causes of action they allege violations of the federal Securities Act of 1933 (15 U.S.C. § 77a et seq.). Their first cause of action is based on section 11 of that act (15 U.S.C. § 77k) which imposes liability on various persons when a registration statement contains an "untrue statement of a material fact" or has "omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . . ." Plaintiffs' third cause of action is based on section 12(2) (15 U.S.C. § 77*l*(2)) which imposes liability when shares have been sold by means of a prospectus which included an "untrue statement of a material fact" or which omitted "to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading. . . ." Plaintiffs' second cause of action is based on section 15 (15 U.S.C. § 77o) which imposes liability on persons who control persons liable under sections 77k or 77*l*.

Plaintiffs' fifth cause of action alleges a violation of section 25401 of the California Corporations Code, which prohibits the sale of a security by means of a communication which "includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." ■ Plaintiffs also allege a common law cause of action for negligent misrepresentation. Among the elements of such a cause of action are that the defendant has made an untrue representation as to a past or existing *material* fact. (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 17 [147 Cal.Rptr. 655], disapproved on other grounds in *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 506-507 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].)

■ Under the federal Securities Act of 1933, "[a]n omission is not actionable unless there is a material fact omitted and unless the material fact that is omitted adversely affects the reliability of other statements. A fact is material if there is a substantial likelihood that, under all the circumstances, a reasonable investor would consider it important in reaching an investment decision. [Citation.]" (*Greenapple* v. *Detroit Edison Co.* (S.D.N.Y. 1979) 468 F.Supp. 702, 708; affd. (2d Cir. 1980) 618 F.2d 198; *Rubin* v. *Long Island Lighting Co.* (E.D.N.Y. 1984) 576 F.Supp. 608, 612.) The test of materiality under the California Corporations Code is the same. (See *Lynch* v. *Cook* (1983) 148 Cal.App.3d 1072, 1081-1087 [196 Cal.Rptr. 544].)

Ordinarily the issue of materiality is a mixed question of law and fact, involving the application of a legal standard to a particular set of facts.

However, if reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law. (See *TSC Industries, Inc.* v. *Northway, Inc.* (1976) 426 U.S. 438, 450 [48 L.Ed.2d 757, 766-767, 96 S.Ct. 2126] [involving whether a proxy statement was materially misleading in violation of section 14(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78n)]; *Rubin* v. *Long Island Lighting Co., supra,* 576 F.Supp. at p. 612.)

In *Rubin* v. *Long Island Lighting Co., supra,* 576 F.Supp. 608, for example, the court held that a complaint alleging material misrepresentations and omissions in a prospectus failed to state a cause of action, because any omissions were immaterial as a matter of law. The prospectus stated that in 1979, a percent of dividends paid were considered return of capital rather than ordinary income, and that preliminary estimates indicated that a portion of 1980 dividends might also represent a return of capital. Plaintiff filed her action after dividends paid in 1981 received ordinary income treatment for tax purposes. Among her allegations was that the prospectus omitted information on accounting principles which would have enabled her to assess the likelihood that future dividends would be treated as return of capital. The court rejected her theory, stating in part, "Nothing in the federal securities laws required the defendants to include in the prospectus details of the computation of the earnings and profits data or the details of the accounting principles employed . . . in determining tax treatment of dividends paid in those two years. The resulting fact is material, not the computation by which the result was obtained. . . ." (*Id.,* at p. 613.) The court also stated, "[T]he goals of full disclosure and fair dealing embodied by the securities laws are not furthered by requiring issuers and proxy solicitors to inundate the investing public with reams of raw data and formulae digestible by few and useful to even fewer. Confusion, rather than informed decisionmaking, would result were such required." (*Id.,* at p. 614.)

Guided by the foregoing principles, we consider the specific allegations of plaintiffs' complaint. First, plaintiffs focus on the explanation in the prospectus of preferred shareholders' voting rights, which provides in pertinent part: "The holders of Series C Preferred Shares are not entitled to vote on matters submitted to a vote at a meeting of shareholders except as hereinafter described. . . . Without the affirmative vote of the holders of at least a majority of the then outstanding Preferred Shares, voting as a class, . . . no amendment to the Company's Articles of Incorporation may be made which would . . . authorize certain mergers of the Company." Plaintiffs contend that the prospectus omits an explanation that preferred shareholders would not be entitled to vote on a so-called reverse triangular merger such as that which eventually occurred here.

Reading that prospectus, however, a reasonable investor could not have been misled as to preferred shareholders' voting rights. The facts that preferred shareholders' voting rights were limited and that they were entitled to vote on some, but not all, mergers were plainly disclosed. In effect, plaintiffs' argument is that the prospectus should have enumerated every possible kind of merger or reorganization, explaining which would and which would not require preferred shareholder approval. However, plaintiffs cite no authority which supports such a broad and complex disclosure requirement. The omission was neither misleading nor material.

We also note that it has been repeatedly held that it is unnecessary to disclose, in connection with a purchase or sale of securities, the occurrence of preliminary merger discussions or negotiations. (*Reiss* v. *Pan American World Airways, Inc.* (2d Cir. 1983) 711 F.2d 11, 14; *Staffin* v. *Greenberg* (3d Cir. 1982) 672 F.2d 1196, 1205-1206.) Among the reasons that such discussions are immaterial as a matter of law is that their disclosure may itself be misleading, and might do more harm than good to shareholders. (*Id.*, at pp. 1206-1207.) If it is unnecessary to disclose actual merger negotiations, it is certainly unnecessary to speculate in a prospectus about the mere possibility that at some future date events might occur which might lead to the type of merger upon which preferred shareholders could not vote.

Plaintiffs also complain that the representations as to preferred shareholders' conversion rights were misleading. According to the registration statement and prospectus, "At the election of the holder thereof, each Series C Preferred Share is convertible into Common Shares at any time at the rate of .9302 Common Shares for each Series C Preferred Share." Plaintiffs argue that the prospectus omitted to state that these conversion rights could be "destroyed" without their consent. Plaintiffs point to the fact that if the preferred shareholders did not approve the Diamond Shamrock-Natomas reorganization agreement, their shares would continue to be convertible to Natomas common shares. That conversion right would in reality be of little worth, plaintiffs argue, as the Natomas common shares would be delisted on the New York Stock Exchange because they would all be owned by one entity, the new holding company. Plaintiffs' theory seems to be that the prospectus included an implied promise that the Natomas common shares would always be listed on the New York Stock Exchange.

In *Kessler* v. *General Cable Corp.* (1979) 92 Cal.App.3d 531 [155 Cal.Rptr. 94], however, the court rejected a similar argument. In 1974, plaintiff in *Kessler* acquired $10,000 in convertible debentures issued by Sprague Corporation. In 1976, after a tender offer, General Cable Corpo-

ration acquired 96.3 percent of Sprague's common stock. As a result, that stock and the convertible debentures were delisted on the New York Stock Exchange. Plaintiff filed an action for damages against Sprague, General Cable, and others. As against Sprague, plaintiff alleged that its 1967 prospectus offering the debentures declared that application had been made to list them on the New York Stock Exchange. Plaintiff interpreted that declaration as an implied promise that the debentures, once listed, would continue to be listed, apparently indefinitely.

The appellate court held that the complaint failed to allege facts constituting a cause of action. The court stated in part that the brief reference to the listing did not constitute a continuing promise to avoid delisting, for whatever reason, for the 25-year life of the debentures, and that no reasonable investor would have so interpreted that statement. In addition, the court also held that California law did not mandate that a corporation must maintain a particular public market for its shareholders or debenture holders. (*Id.*, at pp. 542-543.)

Under certain circumstances, federal courts have held that an existing risk of delisting of stock must be disclosed. In *Sonesta Int'l Hotels Corp.* v. *Wellington Associates* (2d Cir. 1973) 483 F.2d 247, for example, plaintiff alleged that Wellington failed to disclose, in connection with a cash tender offer for shares of Sonesta Corp., several material facts necessary to make its offer not misleading. Among those omissions was that Sonesta might lose its listing on the New York Stock Exchange should Wellington receive the number of tenders it sought.

The appellate court agreed that the omission was material. If Wellington acquired the number of shares it sought, the publicly held stock would have been reduced below exchange standards for listing. The court pointed out that loss of listing would deprive Sonesta shareholders of a ready market for their shares and of the protection of certain exchange requirements. It concluded that the possibility of losing those advantages could have been of importance to a Sonesta shareholder in deciding whether to retain some shares, or tender all of them. "Under these circumstances the risk of delisting was sufficiently appreciable to require disclosure." (*Id.*, at p. 254.)

In this case, however, when the shares were issued, no merger or reorganization was being contemplated, and there was no appreciable risk of delisting. The mere possibility that at some time in the future circumstances might arise which might result in delisting was not a fact which a reasonable investor would have considered important in reaching an investment decision, and did not require disclosure.

Plaintiffs rely on language in *Norlin Corp.* v. *Rooney, Pace Inc.* (2d Cir. 1984) 744 F.2d 255, emphasizing the importance of a New York Stock Exchange listing to shareholders. However, the case is inapposite. At issue in *Norlin* was whether the real probability that stock of Norlin Corporation would be delisted as a result of actions of its board of directors justified issuing a preliminary injunction barring those actions. (*Id.*, at pp. 267-269.) The case does not support plaintiffs' contention that the prospectus in this case omitted any material information.

In summary, the trial court correctly concluded that the omissions alleged were neither material nor misleading as a matter of law. In light of that conclusion, we need not consider the other grounds upon which the court's ruling on the demurrers might be sustained.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 30, 1986. Broussard, J., did not participate therein.