Filed 11/6/14  Goldsholle v. Brisco CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| M. DAVID GOLDSHOLLE, et al., | B250183 |
| Plaintiffs and Appellants, | (Los Angeles County |
| v. | Super. Ct. No. YC063849) |
| ROBERT N. BRISCO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Cary Nishimoto and Stuart Rice, Judges.  Affirmed.

Michael R. Hambly and Robert K. Scott, Advocate Law Group P.C., for Plaintiffs and Appellants.

Wendy Gilberti, iGeneral Counsel, P.C., and Steven Schuman, Leonard, Dicker & Schreiber LLP, for Defendant and Respondent.

* * * * * *

Are a prospective buyer's assurances that it "has a plan" to increase the seller's website traffic actionable as fraud under California securities law?  They are not, and we accordingly affirm the summary adjudication of that claim in the buyer's favor.

**FACTUAL AND PROCEDURAL BACKGROUND**

DoItYourself.com ("Website") is a website aimed at helping people make home improvements.  Since 2005, the Website has generated revenue through advertising, not selling products.  The Website (and other related domain names) was owned by DoItYourself.com, Inc. (the corporation).  The corporation's shareholders are Plaintiffs M. David Goldsholle, Lenore L. Goldsholle, Gerry H. Goldsholle and Advice Company, Inc. (collectively, Plaintiffs).

In late 2006, Plaintiffs began negotiating a sale of the Website to Defendant Internet Brands, Inc. (IB).  During those negotiations, Plaintiffs met with IB's chief executive officer, Defendant Robert Brisco (Brisco).  Brisco told them that the Website would be one of IB's "key" and "critically important propert[ies]" whose success would affect IB's "credibility . . . with Wall Street"; that IB "had the experience, the talent, and the resources" to increase Internet traffic to the Website; that IB "had a plan in place" to do so; and that IB would "put [its] full resources behind" promoting the Website and put its "pedal to the metal."

Plaintiffs and IB thereafter signed an Agreement and Plan of Merger (Agreement), under which IB would acquire the Website.  Instead of selling the Website outright, Plaintiffs sold their stock in the corporation to IB; in exchange, IB agreed to pay Plaintiffs $8.5 million up front, with the potential for an additional $7 million triggered by benchmarks keyed to the Website's traffic (and hence its revenue).  The first three benchmarks turned on traffic alone; the last, on advertising revenues.  The Agreement obligated IB to "operate the Website[] . . . in good faith" and "commit resources" to that task as if no further contingency payment obligation existed.

When the Website's traffic did not meet any of the first three benchmarks, IB paid Plaintiffs $183,893 under the final benchmark.  Plaintiffs then sued IB for breach of contract and breach of the covenant of good faith and fair dealing, and both IB and Brisco

2

(collectively, Defendants) for securities fraud in violation of Corporations Code sections 25401 and 25504, respectively.[1] With respect to the securities fraud claim, Plaintiffs alleged that the statements Brisco made during the negotiations to buy the corporation's stock constituted material and untrue statements and/or omissions.

The trial court overruled Defendants' demurrer, but granted summary adjudication on the securities fraud claims. The court ruled that Plaintiffs did not "identify the existence of an untrue statement of fact or omission of a material fact" because "[Brisco's] alleged statements are merely opinions and vague, general, anecdotal statements as to what defendants plan on doing with the company." Because Brisco was only named in the securities fraud count, the court entered judgment for Brisco. (The court denied IB's summary adjudication motion as to the contract-related claims, and those claims proceeded to trial.)

Plaintiffs now appeal the judgment in favor of Brisco.

## DISCUSSION

California law makes it unlawful for "any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to . . . [m]ake an untrue statement of material fact or omit to state a material fact necessary to make the statement made, in light of the circumstances under which they were made, not misleading." (§ 25401.)[2] The same conduct renders a seller, purchaser or their agent civilly liable for damages. (§ 25501 [civil liability of seller or purchaser], 25504 [civil liability of agent]; see also *Moss v. Kroner* (2011) 197 Cal.App.4th 860, 873.)

California securities law looks to its federal counterpart, (*Viterbi v. Wasserman* (2011) 191 Cal.App.4th 927, 937), and federal law provides that "'[v]ague, generalized, and unspecific assertions' of corporate optimism or statements of 'mere puffing' cannot state actionable material misstatements of fact under federal securities laws. [Citations.]"

---

[1] Unless otherwise indicated, all further statutory citations are to the Corporations Code.

[2] Section 25401 was amended in 2014 to prohibit additional conduct.

(*In re Cornerstone Propane Partners, L.P.* (2005) 355 F.Supp.2d 1069, 1087.) Such "forward-looking or generalized statements . . . are 'not capable of objective verification' and 'lack[] a standard against which a reasonable [seller or purchaser] could expect them to be pegged. [Citations.]" (*Ibid.*) As a result, such statements are immaterial because no "reasonable [seller or purchaser] would consider [them] important in reaching an investment decision." (*Insurance Underwriters Clearing House, Inc. v. Natomas Co.* (1986) 184 Cal.App.3d 1520, 1526.)

The trial court granted summary adjudication because, in its view, there were no triable issues of material fact regarding the (im)materiality of Brisco's statements and that Brisco was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (f); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Exercising independent review, (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142), we come to the same conclusion.

Brisco's statements are indistinguishable from others found not to be actionable. Brisco touted the importance of the Website to IB's business; IB's expertise; and IB's dedication of resources to the Website. Each has been rejected as basis for securities liability. (See, e.g., *Wozniak v. Align Technology, Inc.* (N.D. Cal. 2012) 850 F.Supp.2d 1029, 1036 [statement that product "'will be rolled out broadly as a key element of [defendant's] customer utilization growth strategy'"]; *Grossman v. Novell, Inc.* (10th Cir. 1997) 120 F.3d 1112, 1121-1122 [statements that "we are leveraging our combined knowledge of the expanding scope of network solutions," and "that network applications will quickly reshape customer expectations"]; *Wenger v. Lumisys* (N.D. Cal. 1998) 2 F.Supp.2d 1231, 1245-1246 [statements that "'[f]undamentally, we're just a good company, we know our markets very well, we dominate these markets, we have good people, a good management team, and we're positioned to move forward now'"]; *Glen Holly Entertainment, Inc. v. Tektronix, Inc.* (9th Cir. 2003) 352 F.3d 367, 379 [statements that product was "being treated as a high priority," and that company "intended to allocate all necessary resources to ensure improvement" of product].)

4

Plaintiffs level three attacks at the trial court's ruling. First, they argue that Brisco's statement that IB "had a plan" is not an opinion, but instead "implie[s] [the] existing fact" that he *had* a plan, which was untrue. They cite in *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 249, but the broker-dealer in *Apollo Capital Fund* made the specific assertion that the securities he was selling had preferred status for repayment when, in actuality, they did not. (*Id.* at pp. 237-238, 256.) Here, by contrast, Brisco said that he "had a plan." He offered no details, and Plaintiffs never asked for any. In this situation, we see no distinction between the promise "we will do a good job" and the statement "we have a plan to do a good job." Neither is actionable. (Accord *In re Copper Mountain Securities Litigation* (N.D. Cal. 2004) 311 F.Supp.2d 857, 868-869 [statements that company had a strong product set to pursue emerging opportunities; vague and immaterial].)

Second, Plaintiffs contend that promises regarding future performance can be actionable and cite *People v. Butler* (2012) 212 Cal.App.4th 404. Plaintiffs point to *Butler*'s observation that "section 25401 applies to a stark case in which a seller of securities has either no intention or no ability to ever fulfill the promises made in the security to the investor." (*Id.* at p. 422.) However, *Butler* involved a defendant operating a Ponzi scheme, for which the court held that any promises made to investors regarding the future were "inherently either false or misleading." (*Id.* at p. 424.) IB is not a Ponzi scheme, and *Butler* did not purport to overturn the precedent declaring vague promises of competence or future performance to be immaterial.

Lastly, Plaintiffs assert that the trial court was wrong to decide materiality as a matter of law because a different judge previously overruled a demurrer on the securities claims. In Plaintiffs' view, this shows that "reasonable minds can[] differ" on the materiality of Brisco's statements, which precludes summary adjudication. (*Insurance Underwriters Clearing House, Inc. v. Natomas Co., supra,* 184 Cal.App.3d at p. 1527.) But the differing rulings on demurrer and summary adjudication reflect the different

standards to be applied in each motion--not a difference of opinion on their merits.**3** A demurrer tests the sufficiency of the pleadings and thus looks to the operative complaint's allegations, (see Code Civ. Proc., § 430.10, subd. (e); *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318), while summary adjudication examines whether any material factual disputes remain to be tried and thus looks to the evidence developed and presented at the time of the summary adjudication.  (See Code Civ. Proc., § 437c, subd. (c); *Borders Online v. State Bd. of Equalization* (2005) 129 Cal.App.4th 1179, 1188.)  Further, accepting Plaintiffs' argument would mandate denial of summary judgment (and thus trial) on a claim whenever a trial court overrules a demurrer on that claim; that is not the law.

Accordingly, as there were no triable issues of material fact, summary adjudication was properly granted.

## DISPOSITION

The judgment is affirmed.  Brisco is entitled to his costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

_____, J.

HOFFSTADT

We concur:

_____, Acting P. J.          _____, J.

ASHMANN-GERST                              CHAVEZ

---

**3**     Plaintiffs asserted at oral argument that the two rulings did, in this case, reflect a difference of opinion on the merits.  This argument ignores the different standards and has also been forfeited because Plaintiffs did not include the order overruling the demurrer in the record on appeal.  (E.g., *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46 ["Where the party fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him"].)  The argument is without merit in any event for the reasons explained in the text.