[No. A135898. First Dist., Div. Five. Mar. 29, 2013.]

FEDERAL HOME LOAN BANK OF SAN FRANCISCO, Plaintiff and
Appellant, v.
COUNTRYWIDE FINANCIAL CORPORATION, Defendant and
Respondent.

**COUNSEL**

Goodin, MacBride, Squeri, Day & Lamprey, Robert A. Goodin, Francine T. Radford, Anne H. Hartman; Grais & Ellsworth, David J. Grais, Kathryn C. Ellsworth and Owen L. Cyrulnik for Plaintiff and Appellant.

Shearman & Sterling, Stephen D. Hibbard and John Gueli for Defendant and Respondent.

**OPINION**

**JONES, P. J.**—The trial court concluded res judicata barred Federal Home Loan Bank of San Francisco's (the Bank) claim against Countrywide Financial Corporation (Countrywide Financial) and sustained Countrywide Financial's demurrer to the first amended complaint without leave to amend.

The Bank appeals. It contends the court erred by concluding res judicata barred its claim against Countrywide Financial because "[t]here was no final judgment on the merits in a prior action that could have given rise to res judicata in this action." We disagree and affirm. We conclude the doctrine of res judicata bars the Bank's claim against Countrywide Financial because (1) the Bank's voluntary dismissal of its claim against Countrywide Financial in the prior action was a final judgment on the merits and (2) the claim the Bank dismissed in a prior lawsuit is the same cause of action as the claim it asserts against Countrywide Financial in the current lawsuit. Having voluntarily dismissed with prejudice claims of control-person wrongdoing against one of multiple defendants for its own strategic reasons, the Bank may not avoid the res judicata consequences of its decision and sue the dismissed defendant anew, again alleging control-person liability, in reliance on the pendency of these same claims against the remaining actors in the first action.

FACTUAL AND PROCEDURAL BACKGROUND

We accept as true the following allegations in the Bank's amended complaint for the purpose of reviewing the order sustaining Countrywide Financial's demurrer:

In a process called securitization, an entity "originate[s]" mortgage loans or acquires those loans and aggregates them into a "collateral pool" or loan pool for sale to a financial institution called a "depositor."[1] The depositor sells the loans to a trust, which then issues certificates that investors—like the Bank—can purchase. At some point before May 2010, the Bank purchased 95 residential mortgage-backed securities from various securities dealers "in 78 securitization trusts backed by residential mortgage loans" at a cost of over $13.5 billion dollars. The Bank purchased certificates in five securitizations from Countrywide Securities Corporation (Countrywide Securities). CWALT, Inc. (CWALT) issued the certificates in four securitizations. Countrywide Securities apparently issued the certificates in the fifth securitization.[2]

---

[1] Securitization refers to the practice of pooling and packaging loans for sale to investors. (See *Merrill Lynch Mortg. Investors v. Love Funding* (2d Cir. 2009) 556 F.3d 100, 104 [explaining securitization process for mortgage loans].)

[2] Countrywide Securities and CWALT acted as subsidiaries of Countrywide Financial.

*The Credit Suisse and Declaratory Relief Actions*

In May 2010, the Bank sued eight securities dealers which offered and sold the 95 residential mortgage-backed securities, as well as the entities which issued the certificates or controlled one of the entities that issued the certificates (*Credit Suisse* or the *Credit Suisse* action).[3] The crux of the Bank's claims was defendants made untrue or misleading statements in offering documents issued in connection with the residential mortgage-backed securities the Bank purchased.

Among the defendants in *Credit Suisse* were Countrywide Securities, CWALT, and Countrywide Financial. As relevant here, the Bank alleged (1) Countrywide Securities made untrue or misleading statements in the sale of securities in violation of Corporations Code sections 25401 and 25501 with respect to securitizations 74 through 78;[4] (2) Countrywide Securities and CWALT made untrue or misleading statements in violation of sections 11 and 12 of the Securities Act of 1933 (Sections 11 & 12) (15 U.S.C. § 77a et seq.) with respect to securitizations 75 through 78; and (3) Countrywide Financial violated section 15 of the Securities Act of 1933 (Section 15) based on its control of CWALT. In its Section 15 claim against Countrywide Financial, the Bank alleged "CWALT existed for no purpose [other] than to receive and deposit loans into the trusts. Under Section 15 . . . Countrywide . . . therefore is liable to the Bank jointly and severally with, and to the same extent as, CWALT."

In November 2010, the Bank filed the complaint in the action before us seeking declaratory relief against Bank of America Corporation (declaratory relief action). The Bank sought a declaration that Bank of America Corporation—which had purchased Countrywide's assets—was liable for any damages Countrywide was required to pay in the *Credit Suisse* action.

In August 2011, and following an adverse tentative ruling on a demurrer, the Bank dismissed with prejudice its Securities Act of 1933 claims in the *Credit Suisse* action, including its Section 15 claim against Countrywide Financial. The Bank did so to avoid affirmatively pleading the circumstances surrounding its discovery of facts giving rise to its claims as required by the Securities Act. Two months later, in October 2011, the Bank amended the subject declaratory relief complaint to add Countrywide Financial as a defendant. The operative first amended complaint in the declaratory relief action alleged a single claim against Countrywide Financial as a "control person" under section 25504. Specifically, the Bank alleged "[i]n doing the acts alleged in the sale to the Bank of the seven certificates in securitizations 74

---

[3] *Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA), LLC* (Super. Ct. S.F. County, No. CGC-10-497840).

[4] Unless otherwise noted, all further statutory references are to the Corporations Code.

through 78 described in the [*Credit Suisse*] [a]ction, Countrywide Securities violated [s]ections 25401 and 25501 . . . by offering or selling securities . . . that included untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." The Bank further alleged Countrywide Financial "controlled Countrywide Securities directly or indirectly within the meaning of section 25504" and was "therefore jointly and severally liable with and to the same extent as Countrywide Securities for Countrywide Securities' violation of [s]ections 25401 and 25501. . . ." The amended complaint attached a copy of the operative *Credit Suisse* complaint, incorporated it by reference, and alleged "[t]he control person liability claims asserted against [Countrywide Financial] arise out of the same facts alleged in [*Credit Suisse*], and [the Bank] seeks the same remedy that it sought in the [*Credit Suisse*] [a]ction, that is, rescission and recovery of the consideration paid for the seven certificates."

*Countrywide Financial's Demurrer to the Amended Declaratory Relief Complaint*

Countrywide Financial demurred to the operative amended declaratory relief complaint, contending res judicata barred the Bank's section 25504 claim because the Bank was "impermissibly seeking to relitigate a cause of action that was dismissed with prejudice in a prior action involving the same parties." Specifically, Countrywide Financial argued the Bank's section 25504 claim was "the same cause of action as its Section 15 claim under the 'primary rights' theory." According to Countrywide Financial, the Bank sought to hold it liable in the *Credit Suisse* action "as a control person for alleged misrepresentations in [residential mortgage-backed securities] offering documents" and in the declaratory relief action, the Bank "seeks to hold [Countrywide Financial] liable as a control person for the same alleged misrepresentations in the same . . . offering documents." Countrywide Financial conceded the legal theories in the two cases were different, but contended the Bank "alleged a violation of the same primary right—the asserted right to offering documents free of material misrepresentations; and, moreover, claims in both actions to have suffered the same harm as a result of [Countrywide Financial's] alleged misconduct."

In opposition, the Bank argued the section 25504 claim it asserted in the declaratory relief action was "different from the claims that [it] voluntarily dismissed" in *Credit Suisse* and that res judicata did not bar it from asserting different claims under a different statute. In addition, the Bank contended there was no final judgment on the merits in the *Credit Suisse* action because its claims on each securitization at issue in *Credit Suisse* were "part of a single cause of action for purposes of res judicata." As the Bank explained,

"the majority of the Bank's claims on those securities in the *Credit Suisse* action remain pending. Thus, there has been no final judgment on the merits of the Bank's entire *cause of action* on any of the four securities in the *Credit Suisse* action that are also the subject of this action . . . ."[5]

At a hearing, the court sustained Countrywide Financial's demurrer without leave to amend. The court observed, "[t]he real question here is whether what was dismissed is the same primary right as to what is alleged here [in the declaratory relief action]." Then the court answered the question in the affirmative. It explained, the Securities Act of 1933 and sections 25401 and 25501 render "control persons responsible under the same circumstances . . . without any significant difference under the federal scheme or the state scheme. . . . And the California statute is not materially different from the federal statute." The court continued, "a general concept in preclusive effect jurisprudence is that the [c]ourt is not bound by the format, or the pleadings, or the articulation in the causes of action. In other words . . . you don't look at causes of action . . . or parts of cause[s] of action. You get to the heart of what is going on. And it seems to me that the heart of what is going on, from this perspective . . . is control person liability. One under a federal statute and one under a state statute. And no matter how you plead it or what the sequence is, . . . that it is the same in both cases."

The court entered judgment for Countrywide Financial and the Bank timely appealed.

## DISCUSSION

We review de novo the court's order sustaining Countrywide's demurrer without leave to amend. (*Estate of Dito* (2011) 198 Cal.App.4th 791, 800 [130 Cal.Rptr.3d 279] (*Dito*).) "We first review the complaint de novo to determine whether it contains facts sufficient to state a cause of action under any legal theory. [Citation.] ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.]" ' [Citation.] 'We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory. [Citations.] We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale. [Citation.]' [Citation.]". (*Ibid.*)

---

[5] The Bank seemed to take conflicting positions about the primary right theory. Initially, the Bank argued all of its claims arose out of the same primary right. Later in the opposition, however, the Bank contended "the purchase of each security caused a unique harm to the Bank and constitutes a separate primary right."

## I.

### *The Bank's Voluntary Dismissal of Its Section 15 Claim Was a Final Judgment on the Merits*

■ " ' "Res judicata" describes the preclusive effect of a final judgment on the merits.' [Citation.] It 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Under the doctrine of res judicata, 'all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.' [Citation.]" (*Dito, supra,* 198 Cal.App.4th at p. 801; see *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 [108 Cal.Rptr.3d 806, 230 P.3d 342] (*Boeken*).) " ' "Res judicata precludes piece-meal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 [123 Cal.Rptr.2d 432, 51 P.3d 297] (*Mycogen*), quoting *Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1245 [65 Cal.Rptr.2d 25].)

■ Res judicata bars a cause of action that was or could have been litigated in a prior proceeding if "(1) the present action is on the same cause of action as the prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding. [Citation.]" (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 557 [131 Cal.Rptr.3d 382] (*Bullock*).) Countrywide Financial has the burden of establishing each element of res judicata. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 529 [75 Cal.Rptr.3d 19].)

■ The threshold question is whether the Bank's voluntary dismissal of its Section 15 claim in the *Credit Suisse* action was a final judgment on the merits. The answer is yes. " 'A dismissal with prejudice is the modern name for a common law retraxit. [Citation.] . . . Dismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again.' " (*Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1533 [124 Cal.Rptr.3d 402], quoting *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 820 [265 Cal.Rptr. 217] (*Torrey Pines*).) The Bank's voluntary dismissal of its claim against Countrywide Financial in the *Credit Suisse* action "constituted a retraxit and determination on the merits invoking the principles of res judicata." (*Torrey Pines,* at p. 819; see *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1331 [35 Cal.Rptr.3d 496].)

The Bank contends there is no final judgment on the merits in *Credit Suisse*—and thus no res judicata—because the primary liability claims against other defendants remain pending in that case. At oral argument, the Bank conceded there is no authority supporting this claim. In the absence of any authority on point, the Bank relies on cases holding that derivative liability claims are part of the same cause of action as the primary claims that underlie them, including *Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 575 [32 Cal.Rptr.3d 244] (*Higashi*). In *Higashi*, LeVine was a partner in a medical partnership; his wife became the sole shareholder and president after his death. After LeVine died, the partnership, Orange County Heart Institute and Research Center (OCHI), informed its accountant, Gerald Higashi, that it had changed its method of allocating the partners' income. LeVine's wife, the plaintiff, objected and initiated an arbitration against OCHI and its partners pursuant to an arbitration provision in the partnership agreement. (*Id.* at pp. 570–571.) The arbitrator ruled in favor of the partnership and LeVine's wife sued Higashi for fraud, negligence, and conspiracy in the superior court. (*Id.* at p. 571.)

The trial court granted Higashi's motion for summary judgment on the conspiracy claim, concluding "res judicata . . . conclusively established Higashi's complete defense to the claim for civil conspiracy." (*Higashi, supra*, 131 Cal.App.4th at p. 573, fn. omitted.) The appellate court affirmed. It determined the lower court properly granted summary judgment for Higashi because his liability was "dependent upon the commission of an underlying tort by OCHI and its partners, a claim decided adversely to [LeVine] in the prior arbitration." (*Id.* at p. 573.) The *Higashi* court explained, "the arbitrator's award in favor of the OCHI partners on plaintiff's claims of breach of fiduciary duty and conversion precludes the claims of civil conspiracy and aiding and abetting made against Higashi in this action. . . . [¶] . . . [¶] The primary right asserted in the arbitration . . . was the right to be free of the wrongful diversion of plaintiff's rightful share of partnership profits to other OCHI partners. The instant conspiracy and aiding and abetting claim against defendants asserts the identical primary right. Thus plaintiff's claim against the OCHI partners is identical to its claim against defendants. Of course, liability for invasion of that primary right must be established against each party charged with the invasion. But if plaintiff's primary right is not violated at all, no defendant is liable." (*Id.* at pp. 575–576.)

We decline to extend the reasoning in *Higashi* to this situation. *Higashi* considered whether a claim survived in light of prior arbitration, where the merits of the case against one defendant were resolved. *Higashi* does not stand for the proposition that conduct of multiple defendants separately causing harm gives rise to a single cause of action in this context or that there can be no formal judgment as to one of multiple defendants until a judgment is entered as to all. We conclude the pendency of claims against other

defendants in the *Credit Suisse* action does not undermine the res judicata effect of the final judgment on the merits for Countrywide Financial in that case.

The Bank also cites *Freecharm Ltd. v. Atlas Wealth Holdings Corp.* (S.D.Fla., Sept. 30, 2011, No. 11-20003-Civ.) 2011 WL 4591929, a district court order from the Southern District of Florida, for the proposition that "a claim that derives from the same harm as an underlying predicate claim is part of the same cause of action as the predicate claim for res judicata purposes." After briefing in this case was completed, the Eleventh Circuit Court of Appeals affirmed the district court order in a slip opinion. (*Freecharm Ltd. v. Atlas Wealth Holdings Corp.* (11th Cir., Dec. 4, 2012, No. 11-15094) 2012 WL 6029136.) The Eleventh Circuit Court of Appeal's unpublished decision in *Freecharm* does not assist the Bank because the court analyzed only the district court's determination that collateral estoppel barred the claims and not whether—as here—res judicata applies to bar relitigation of the Bank's claim against Countrywide Financial.

■ The Bank urges this court to conclude res judicata applies to only the four securitizations on which both Countrywide Securities and CWALT are sued in the *Credit Suisse* action, and not to a fifth securitization on which Countrywide Securities alone is sued. According to the Bank, "[t]here can be no res judicata as to the fifth securitization . . . because *no claims* related to that securitization were ever voluntarily dismissed in the *Credit Suisse* action." This argument misses the point. The issue is not whether the Bank dismissed any claims regarding the fifth securitization in the *Credit Suisse* action. The issue is whether the Bank could have raised a claim against Countrywide Financial based on its alleged control of Countrywide Securities in *Credit Suisse*. The law is settled that a "prior final judgment on the merits not only settles issues that were not actually litigated but also every issue that might have been raised and litigated in the first action." (*Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441, 446 [164 Cal.Rptr. 913].) When a matter is within the " ' " 'scope of the [prior] action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it . . . . Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable.' " ' " (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 576 [117 Cal.Rptr.3d 398], citation omitted.)

■ The Bank does not argue it was unable to raise a claim regarding the fifth securitization in the *Credit Suisse* action. (See 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 406, p. 1041 [no bar where plaintiff "was unable to rely on a certain theory or to seek a certain remedy or form of relief in the first action"].) Instead—and without citing any authority—the Bank contends

Countrywide Financial's argument is not "correct" and that it is "at best [one] that . . . should have [been] raised in [Countrywide Financial's] demurrer. It is not an issue that can properly be resolved on this appeal." We reject this argument for two reasons. First, it is not supported by any authority. (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [27 Cal.Rptr.3d 583], fn. omitted [failure to support contention with authority "constitutes a waiver of the issue on appeal"].) Second, we see no reason why Countrywide Financial was required to raise this argument in its demurrer. The Bank made the argument in its opposition to the demurrer, and Countrywide Financial responded to it in its reply. The court was not persuaded by the Bank's argument and neither are we.

II.

### *The Bank's Section 25504 Claim Is the Same Cause of Action as the Section 15 Claim It Dismissed with Prejudice in the* Credit Suisse *Action*

The next question is whether the Bank's section 25504 claim in the declarative relief action is the same "cause of action" as the Section 15 claim it dismissed with prejudice in the *Credit Suisse* action.[6] The answer is yes.

 California courts apply the " ' "primary rights" theory' " to "determine whether two proceedings involve identical causes of action for purposes of claim preclusion." (*Boeken, supra,* 48 Cal.4th at p. 797, citation omitted.) "For purposes of res judicata, a cause of action consists of the plaintiff's primary right to be free from a particular injury, the defendant's corresponding primary duty and the defendant's wrongful act in breach of that duty. [Citation.] The violation of a primary right gives rise to only a single cause of action. [Citation.]" (*Bullock, supra,* 198 Cal.App.4th at p. 557.)

" ' "[T]he 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. 'Hence a judgment for the defendant is

---

[6] In its opening brief, the Bank claims the only issue "in dispute on this appeal" is whether the prior proceeding resulted in a final judgment on the merits. But later in its opening brief, the Bank discusses whether the claims are part of the same cause of action and in its reply brief, the Bank states, "[t]he central question on this appeal is whether all of the Bank's claims on each security are part of the same 'primary right' (or cause of action) for purposes of res judicata." The questions presented here are whether the voluntary dismissal of the Section 15 claim in the *Credit Suisse* action is a final judgment on the merits with respect to that claim and whether the section 25504 claim asserted against Countrywide in the declaratory relief action is the same cause of action as the Section 15 claim in the *Credit Suisse* action.

a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief.' [Citations.]" Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right. [Citation.]' " (*Bullock, supra,* 198 Cal.App.4th at p. 557, quoting *Boeken, supra,* 48 Cal.4th at p. 798.)

In the *Credit Suisse* action, the Bank claimed CWALT and others violated Sections 11 and 12 by making misrepresentations in offering documents. Section 11 "imposes liability on various persons when a registration statement contains an 'untrue statement of a material fact' or has 'omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . . .' " (*Insurance Underwriters Clearing House, Inc. v. Natomas Co.* (1986) 184 Cal.App.3d 1520, 1526 [228 Cal.Rptr. 449] (*Insurance Underwriters*), quoting 15 U.S.C. § 77k.) Section 12 "imposes liability when shares have been sold by means of a prospectus which included an 'untrue statement of a material fact' or which omitted 'to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . .' " (*Insurance Underwriters,* at p. 1526, quoting 15 U.S.C. § 77l(2).) In the *Credit Suisse* action, the Bank sought to hold Countrywide Financial liable as a control person of CWALT under Section 15, which provides that "[e]very person who . . . controls any person liable under" Sections 11 or 12 is jointly and severally liable "with and to the same extent as such controlled person . . . ." (15 U.S.C. § 77o(a).)

█ In the current action, the Bank seeks to hold Countrywide Financial liable as a control person of Countrywide Securities under section 25504, which "imposes joint and several liability for securities law violations on '[e]very person who directly or indirectly controls a person liable under Section 25501 . . . .' "[7] (*Hellum v. Breyer* (2011) 194 Cal.App.4th 1300, 1312 [123 Cal.Rptr.3d 803] (*Hellum*).) Courts have held section 25504 " 'is substantially the same as' " Section 15. (*Durham v. Kelly* (9th Cir. 1987) 810 F.2d 1500, 1505; *Hellum, supra,* 194 Cal.App.4th at pp. 1315, fn. 8, 1312 ["section 25504 was modeled on the federal statutes governing control-person liability . . ."]; see Marsh & Volk, Practice Under the Cal. Securities Laws (2012) § 14.03[4][c], pp. 14-23 through 14-25 & fn. 53 (rel. 40-7/2012); *Viterbi v. Wasserman* (2011) 191 Cal.App.4th 927, 937 [123 Cal.Rptr.3d 231].)

---

[7] Section 25501 establishes liability for violations of section 25401, which prohibits sales of securities "by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." (§ 25401.)

In both actions, the Bank seeks compensation for the " 'same harm.' " (*Bullock, supra,* 198 Cal.App.4th at p. 557.) The gravamen of both claims is Countrywide Financial controlled a party who made misrepresentations in connection with the same residential mortgage-backed securities, harming the Bank. The Bank concedes as much in the operative declaratory relief complaint, where it alleges "[t]he control person liability claims asserted against [Countrywide Financial] arise out of the same facts alleged in the [*Credit Suisse*] [a]ction, and the Bank seeks the same remedy that it sought in the [*Credit Suisse*] [a]ction, that is, rescission and recovery of the consideration paid for the seven certificates." By the Bank's own admission, the *Credit Suisse* and declaratory relief actions involve the same parties and seek compensation for the same harm. As a result, they "involve the same primary right" and are the same cause of action for res judicata purposes. (*Boeken, supra,* 48 Cal.4th at p. 804.)

*Torrey Pines, supra,* 216 Cal.App.3d at page 819 is instructive. There, Torrey Pines Bank sued William White and another defendant in superior court case *Torrey Pines Bank v. Ball* (Super. Ct. San Diego County, 1989, No. N38961) to enforce White's continuing guaranty. White and two other plaintiffs later filed a lawsuit against the bank and others, asserting claims for, among other things, breach of fiduciary duty (*Mesa Circuits, Inc. v. Torrey Pines Bank* (Super. Ct. San Diego County, 1989, No. 597676)). (*Torrey Pines,* at p. 817.) White dismissed his lawsuit with prejudice in *Mesa Circuits, supra,* No. 597676 and the bank moved for summary judgment against White in *Ball, supra,* No. N38961. The trial court denied in part the bank's motion for summary judgment and the bank petitioned for writ of mandate. (*Torrey Pines,* at pp. 817–818.)

The *Torrey Pines* court issued a writ of mandate directing the lower court to grant the bank's motion for summary judgment. (*Torrey Pines, supra,* 216 Cal.App.3d. at p. 824.) It determined res judicata barred White's affirmative defenses because "[s]uch affirmative defenses assert the same nucleus of operative facts and raise the same legal issues as those alleged in [his] first amended complaint in case number 597676. White's voluntary dismissal with prejudice of his lawsuit in case number 597676 constituted a retraxit and determination on the merits invoking the principles of res judicata barring relitigation of those issues as affirmative defenses in case number N38961." (*Id.* at pp. 819–820.) The *Torrey Pines* court explained, ". . . White's dismissal with prejudice in case number 597676 barred another action by White against the Bank based on the same factual grounds alleged in his first amended complaint" and held ". . . White's dismissal with prejudice also precluded him from asserting those identical facts as affirmative defenses to the Bank's complaint in case number N38961." (*Id.* at p. 821.)

As in *Torrey Pines*—and by the Bank's own admission—the declaratory relief the claims asserted in the declaratory relief action "assert the same nucleus of operative facts and raise the same legal issues as those alleged in" the *Credit Suisse* action. (*Torrey Pines, supra*, 216 Cal.App.3d at p. 819.) As a result, res judicata bars the relitigation of the Bank's claim against Countrywide Financial in this lawsuit.

■ We conclude the Bank's Section 15 claim in the *Credit Suisse* action and its section 25504 claim in the current lawsuit constitute "identical causes of action for purposes of claim preclusion." (*Boeken, supra*, 48 Cal.4th at p. 797.) This result furthers the purpose behind res judicata: to "promote[] judicial economy" by " 'curtail[ing] multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.' [Citation.]" (*Mycogen, supra*, 28 Cal.4th at p. 897.)

## DISPOSITION

The judgment is affirmed. Countrywide Financial is awarded costs on appeal.

Simons, J., and Bruiniers, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 17, 2013, S210566. Chin, J., did not participate therein.