Filed 4/7/15  Silliman v. Silliman CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RUSSELL SILLIMAN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>DEAN C. SILLIMAN et al.,<br><br>    Defendants and Respondents. | G050731<br><br>(Super. Ct. No. CIVDS917272)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Gilbert G. Ochoa, Judge.  Affirmed.

Robert J. Spitz for Plaintiff and Appellant.

Fullerton, Lemann, Schaefer & Dominick, Michael R. Schaefer and Lee B. Madinger for Defendants and Respondents.

\*        \*        \*

INTRODUCTION

Russell Silliman contended his son and daughter-in-law, Dean C. Silliman and Kylene Silliman, misappropriated his money and real property.[1] Following a bench trial on the equitable causes of action in Russell's complaint, the trial court found Russell and Dean had entered into an oral partnership agreement, by virtue of which they owed a fiduciary duty to each other, and that the real properties at issue were owned by the partnership. The court also found that Dean had not breached his fiduciary duty to Russell. The court therefore found in favor of Dean and Kylene, and against Russell, on all equitable causes of action.

Following the bench trial, the court entered judgment on several legal causes of action, concluding that Russell could not establish those causes of action in light of the findings made in connection with the equitable causes of action. The court also sustained Dean and Kylene's demurrer to the remaining legal causes of action, and denied Russell leave to file an amended complaint.

On appeal, Russell argues the trial court erred by entering judgment on the legal claim for elder financial abuse. The court properly concluded Russell could not establish the cause of action in light of the findings at the bench trial that the real properties and the proceeds of their sales belonged to Russell and Dean's real estate investment partnership, and that Dean had not breached any fiduciary duties in connection with the partnership and its assets.

We further reject Russell's argument that the trial court lacked jurisdiction to allocate assets to the partnership. The real properties at issue were within the trial court's jurisdiction, and the court did not exceed its jurisdiction in entering its judgment.

---

[1] We will refer to the parties by their first names to avoid confusion; we intend no disrespect.

2

Finally, we conclude the trial court did not err in sustaining the demurrer to the first amended complaint, or in denying leave to file a second amended complaint.

We therefore affirm the judgment.

STATEMENT OF FACTS

Russell and Dean were joint tenants on three pieces of property, located in Norwalk, Whittier, and Cedar Glen. The Norwalk and Whittier properties were sold in 2001, and the proceeds were used to buy a property in Lake Arrowhead known as the Aleutian property.

In 2003, a forest fire destroyed the structures on the Cedar Glen property. Dean and Russell decided not to rebuild on the Cedar Glen property, but rather to take the insurance proceeds and buy and "flip" new tract homes. Russell refused to put in writing his agreement with Dean regarding the real estate partnership. Insurance proceeds totaling $578,683.52 were paid by checks written solely to Russell, and were deposited in a bank account in the names of Russell and Dean.

In August 2004, money from Russell and Dean's account was used to buy a property in Lake Elsinore; title to this property was taken in the names of Dean and Kylene because Russell had bad credit. The Aleutian property was sold in November 2004, and the proceeds were placed in Russell and Dean's account. A property in Fontana was purchased in December 2004; the money for the all-cash purchase came from Russell and Dean's bank account, and title was taken in Dean's and Kylene's names.

The Lake Elsinore property was sold in June 2005, and the proceeds were placed in a newly opened account in the names of Russell and Dean.

A property in Beaumont was purchased in July 2005, and title was taken in Dean's and Kylene's names. The Beaumont property was financed, and the mortgage

3

was only in Dean's and Kylene's names.  The downpayment for the purchase came from Russell and Dean's account.

Money in the bank account in Russell's and Dean's names was transferred to a new account in Dean's and Kylene's names because Dean was concerned about a negative balance in Russell's individual account that could have negatively affected the joint account.  When the Fontana property was sold in October 2006, the proceeds were deposited in the account in Dean's and Kylene's names.  Dean used some of those proceeds to make a downpayment on the purchase of a home for himself in Yucaipa.

After the real estate market collapsed, Russell and Dean were unable to sell the Beaumont property because its value was less than the amount owed on the mortgage.

PROCEDURAL HISTORY

In December 2009, Russell sued Dean and Kylene for numerous causes of action, including breach of contract, fraud, conversion, and elder financial abuse.  The trial court bifurcated trial of the case, with the equitable issues to be tried first to the court, and remaining legal issues, if any, to be tried to a jury.

Following a bench trial in July 2011, the court entered a verdict in favor of Dean and Kylene, and against Russell, on the causes of action for breach of fiduciary duty; to quiet title to the Cedar Glen property; to quiet title to the Yucaipa property; for an accounting; for unjust enrichment; and to partition the Cedar Glen and Yucaipa properties.[2]  Dean and Kylene filed a motion for entry of judgment on all causes of action, arguing the issues resolved in their favor at the bench trial required entry of judgment on all legal causes of action as well.  The court granted the motion for entry of judgment as to the causes of action for breach of oral contract, conversion, declaratory relief, fraud, and money had and received.  The court initially took the motion under

_____

[2]  No party requested a statement of decision from the trial court.

4

submission as to the cause of action for elder financial abuse; the court later granted that portion of the motion as well. The court denied the motion as to the causes of action for intentional and negligent infliction of emotional distress.

In May 2012, Dean and Kylene filed a motion for judgment on the pleadings of the causes of action for intentional and negligent infliction of emotional distress. After briefing and a hearing, the court granted the motion for judgment on the pleadings, with 30 days' leave to amend.

Russell filed a first amended complaint in August 2012; the first amended complaint alleged not only the causes of action for intentional and negligent infliction of emotional distress, but also for negligence, professional negligence, constructive fraud, and elder financial abuse and neglect. Dean and Kylene filed a demurrer to the causes of action for infliction of emotional distress, and a motion to strike all other causes of action. Russell dismissed the newly added causes of action, but later filed a motion for leave to file a second amended complaint, which would add back in the causes of action for negligence, constructive fraud, and elder financial abuse. Dean and Kylene's demurrer to the infliction of emotional distress claims remained on calendar.

At a hearing on all pending motions, the trial court (1) sustained the demurrer to the first amended complaint without leave to amend, (2) determined the motion to strike was moot, and (3) denied the motion for leave to file a second amended complaint. Judgment was entered in favor of Dean and Kylene on all claims, and Russell filed a timely notice of appeal.

DISCUSSION

I.

*ELDER FINANCIAL ABUSE*

Russell argues the trial court erred by entering judgment on his claim for elder financial abuse, depriving him of a jury trial on that cause of action.

5

Elder financial abuse occurs when a person takes, secretes, appropriates, obtains, or retains any property belonging to a person age 65 or older, or assists in doing so, for a wrongful use, or with intent to defraud, or by undue influence. (Welf. & Inst. Code, §§ 15610.27, 15610.30.)

Russell's complaint alleged that Dean and Kylene committed elder financial abuse through the following acts:

"a. By financially abusing [Russell] by transferring funds belonging to [Russell] that were being held in [Russell]'s Trust Account into their own accounts, without having [Russell]'s name on it and denying [Russell] access to his Retirement Funds[.]

"b. By co-mingling [Russell]'s Retirement Funds with their own funds, so as to disguise and cover up their personal use of [Russell]'s funds.

"c. By failing to make the funds belonging to [Russell] available to him upon demand.

"d. By purchasing real property using his Retirement Funds as the downpayment and then refusing and failing to convey title to the properties upon his request and refusing to sell the properties and refusing to place the proceeds from the sales into his Trust Account.

"e. By purchasing the Beaumont Property in their own names, using funds in [Russell]'s Trust Account, without his authorization or approval. By failing to place [Russell]'s name on the title to this real property, despite the fact that funds in his Trust Account were used for the purchase. They failed and refused to sell the Beaumont Property at a time that they were instructed by [Russell] to do so, causing [Russell] to lose the equity that had been paid out of his Retirement Funds for the purchase of the property. [Dean and Kylene] have continued to use Retirement Funds from the Trust Account to pay the deficit each month on the payments for mortgage, property taxes, insurance and other expenses.

6

"f.  [Dean and Kylene] have used and continue to use [Russell]'s Retirement Funds from the Trust Account for their own use and purpose without authorization from [Russell] and despite [Russell]'s objections and instructions to the contrary.

"g.  [Russell] has requested and demanded repeatedly that all of his funds in the Trust Account be returned to him and [Dean and Kylene] have failed and refused to do so.

"h.  [Russell] has a variety of medical and health problems.  All of [Russell]'s Retirement Funds are being held by the Defendants, Dean and Kylene.  They have failed and refused, despite repeated demands to make any of these Retirement Funds that they are holding in the Co-Mingled Account and otherwise, available to [Russell] to take care of his health and medical needs."  (Some capitalization omitted.)

The complaint defined "Retirement Funds" as the fire insurance proceeds, funds from the sale of properties, Social Security benefits, and other funds and income belonging to Russell.  The complaint defined "Trust Account" as the bank account in which Dean and Kylene promised to place and hold in trust Russell's retirement funds.

A trial court's findings at the conclusion of a trial on equitable issues are conclusive and may be dispositive of remaining legal issues.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1244.)  Following the bench trial in this case, the court found that Russell and Dean entered into a real estate investment partnership, and all of the property at issue in the case was property of the partnership.  The court also found that Dean owed a fiduciary duty to Russell as his investment partner, and Dean did not violate his fiduciary duty.  The court found that Russell had received almost $270,000 of the partnership's funds for his own personal use, while Dean and Kylene had received almost $125,000 of those funds for their personal use.

7

The statute defining elder financial abuse provides, as follows: "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." (Welf. & Inst. Code, § 15610.30, subd. (b).)

Could Dean have taken, secreted, appropriated, obtained, or retained Russell's property for a *wrongful* use, with an intent to defraud, or by undue influence when Russell and Dean entered into a partnership to hold and manage that property, and when Dean was found not to have violated any fiduciary duty to Russell? Given the evidence before the trial court, the court's findings, and the allegations in the complaint regarding the cause of action for elder financial abuse, we conclude Dean could not.

In ruling on the motion for entry of judgment, the trial court concluded: "The elder abuse action again was dealt with in my findings that there was no breach of fiduciary duty on [Dean's] part. Also, the finding is that they had an investment partnership agreement between them which they operated under over several years. I also made the finding in my ruling that I thought Russell—although he was 79-years old, I thought he was clear-minded. I didn't think he had any memory problems in dealing with his testimony. And I specifically noted that because I felt that was the case based on his testimony. So I didn't find anything in there, which really takes care of the elder financial abuse."

All the allegations regarding elder financial abuse assumed that all pieces of real property, and the rents and sales proceeds from those properties, belonged exclusively to Russell, and that Dean and Kylene financially abused Russell by using, withholding, and commingling those properties and funds. The court's finding that all the real properties and funds were the property of a real estate investment partnership of which Russell and Dean were partners, and that Dean did not breach his fiduciary duty to

8

Russell in his handling of the properties and funds, prohibits a finding that Dean and Kylene committed elder financial abuse against Russell.

On appeal, Russell argues the finding of no breach of fiduciary duty in connection with his and Dean's partnership agreement "does not obviate the requirement that . . . Dean's behavior . . . be scrutinized under the more statutorily stringent standard set forth in the Elder Abuse Act." Russell fails to cite any authority supporting his contention that the fiduciary duty owed under the Elder Abuse Act (Welf. & Inst. Code, § 15600 et seq.) is different from the fiduciary duty owed in any other situation.

Russell also argues the presumption of bad faith arising under Welfare and Institutions Code section 15610.30, subdivision (b), was never litigated in the trial court. The trial court's findings regarding a partnership agreement between Russell and Dean would prevent a counterfinding that Dean took, appropriated, secreted, obtained, or retained Russell's property, much less that he did so knowing such a taking would be harmful to Russell. There would be no way for any reasonable trier of fact to conclude the presumption of bad faith had arisen. At oral argument in this court, Russell's counsel focused on the likelihood that Russell would be harmed, based on Dean's knowledge of Russell's limited income without distributions from their joint and other bank accounts. Counsel ignored that the claim for violation of the elder abuse law failed based on the lack of any wrongful taking or appropriating by Dean.

Russell also argues the evidence presented during the bench trial established a prima facie case of elder financial abuse. However, the evidence Russell cites is based on his own testimony, which was rejected by the trial court as not credible: "It [is] apparent to the Court that [Russell's] credibility was completely lacking. [¶] . . . [¶] All of these factors, taken as a whole, led the court to conclude that [Russell]'s testimony should be rejected." When considering the evidence in toto, we conclude the evidence at the bench trial did not constitute a prima facie case of elder financial abuse.

9

Russell argues, for the first time in his reply brief on appeal, that the trial court's findings cannot support the judgment because they were based on substantial evidence rather than a preponderance of the evidence. The preponderance of the evidence standard is the appropriate one for initial factfinding in the trial court. (*Wollersheim v. Church of Scientology* (1999) 69 Cal.App.4th 1012, 1017.) Given the detailed factual findings by the trial court in its lengthy written decision, we conclude the court made its findings by a preponderance of the evidence, and the reference to "substantial evidence" in the decision was simply a misnomer. (*Id.* at pp. 1017-1018 [appropriate to assume trial court applied preponderance of the evidence test where the record does not reflect significant argument took place in the trial court regarding the difference between preponderance and substantial evidence standards].)

Russell also argues, for the first time in his appellate reply brief, the trial court erred by failing to assign to Dean and Kylene the burden of proving he did not breach his fiduciary duty to Russell, and by failing to make a finding that Dean did not breach his fiduciary duty to Russell. The trial court found that a fiduciary relationship existed between Russell and Dean, but that Dean had not violated a fiduciary duty to Russell. In making this finding, the court imposed on Russell the burden of proof of a breach: "The Court finds that [Russell] has not met his burden to show that either Dean or Kylene violated their fiduciary duty."[3]

The general rule that a party has the burden of proof on every fact essential to his or her claim for relief applies "[e]xcept as otherwise provided by law." (Evid. Code, § 500.) The law provides that where a plaintiff has proven the existence of a

---

[3] In Dean and Kylene's trial brief, they advised the trial court that "Russ bears the burden of proof on all issues of fact." In Russell's trial brief, he advised the court: "Where such a fiduciary relationship exists between parties, based upon a relationship of trust and confidence, there is a presumption of undue influence by reason of such relationship and that a substantial advantage has been gained, then the burden of proof is shifted."

10

fiduciary or confidential relationship, and that the fiduciary has obtained an advantage over the plaintiff, the burden of proof shifts to the fiduciary to prove he or she acted in good faith. "Where it is established as a fact that a confidential relation exists . . . , the rules governing confidential relations apply, and a presumption of undue influence arises from any transaction by which the person in the superior position gains an advantage over the other. [Citations.] Such transactions are constructively fraudulent, and the burden is cast upon the party who has gained the advantage to show fairness and good faith in all respects. [Citations.]" (*Johnson v. Clark* (1936) 7 Cal.2d 529, 534-535; see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 296.) Although the trial court found Russell and Dean were in a fiduciary relationship, it did not find that Dean was in a superior position or gained an advantage over Russell. To the contrary, the court specifically found Dean did not gain any undue advantage over Russell. As relevant to this argument, the court found:

" . . . That Plaintiff Russell Silliman and Defendant Dean Silliman owed a fiduciary duty to each other with regard to use and investment of the funds. [¶] . . . [¶]

" . . . By virtue of the confidential relationship that existed between [Russell] and [Dean], the Court finds that a fiduciary relationship did exist for the purposes of use of this investment account. The Court finds that [Russell] has met his burden to establish that there was a fiduciary relationship.

" . . . The Court having reviewed the accounting, incorporated the accounting all the summaries of the flow of funds from the investment accounts, find[s] that Dean Silliman has not breached any fiduciary duty to the Plaintiff Russell Silliman. [¶] . . . [¶]

" . . . The Court finds that Dean and Kylene Silliman were not unjustly enriched by the way they managed the funds and property of the investment partnership.

" . . . The court finds that Dean Silliman did not commit constructive fraud against Russell Silliman and did not fail to disclose any relevant matters to Russell

11

Silliman during the course of their transactions within their investment partnership. The Court finds that [Russell] has not met his burden to show that either Dean or Kylene violated their fiduciary duty."

Russell argues that once a fiduciary relationship is established, the burden shifts to the defendant to prove there was no breach of that duty. Russell's argument skips a critical step, namely, proof that Dean gained an advantage over Russell in the real estate or other transactions. Because the court found a fiduciary duty but no breach and no undue advantage, the burden never shifted to Dean to show good faith. Accordingly, we reject Russell's argument that the trial court applied the wrong burden of proof to Russell's claim for breach of fiduciary duty.


II.

*DID THE TRIAL COURT ACT IN EXCESS OF ITS JURISDICTION BY ALLOCATING ASSETS?*

Russell argues the trial court acted in excess of its jurisdiction by allocating assets—both real property and monetary—to the parties. We review this question de novo. (*Burke v. California Coastal Com.* (2008) 168 Cal.App.4th 1098, 1106 [whether the trial court acted in excess of the jurisdiction granted to it by statute is a legal issue subject to independent review].)

Among the causes of action before the court in the bench trial were causes of action to quiet title to and/or partition the Cedar Glen and Yucaipa properties. Allocation of those assets was unquestionably within the court's jurisdiction. All other items of real and personal property were properly before the court in connection with Russell's various claims that Dean breached his fiduciary duties. The trial court did not act in excess of its jurisdiction.

Russell's argument really amounts to a claim that the judgment was not supported by substantial evidence. When raised in this manner, the argument still fails. In the first place, Russell is incorrect when he states in his appellate briefs that the trial

12

court allocated assets to Dean and Kylene. To the contrary, the court found the assets belonged to the partnership, of which Russell and Dean are partners.

The trial court's finding that a partnership to invest in real estate was formed verbally between Russell and Dean is supported by substantial evidence. California law provides that a partnership agreement need not be in writing, even if the purpose of the partnership is to own and sell real property. "It is well settled in California that a partnership may be formed by parol even though its sole purpose is to deal in real estate. If a partnership is formed and real property is dedicated to partnership use and is used by the partnership for its sole benefit the fact that title was acquired by one or more of the partners with their private funds or was owned by them as tenants in common prior to the formation of the partnership will not necessarily defeat the claim of the partnership to ownership of the property in the absence of an express agreement that it should remain property of those in whose names title stood. Under such circumstances the owners of the legal title hold the property in trust for the partnership. [Citation.] . . . [¶] . . . [¶] Nor does the statute of frauds prevent proof of the existence of a trust in favor of the partnership where title stands in the names of the partners or in that of a third person." (*Swarthout v. Gentry* (1943) 62 Cal.App.2d 68, 78-79.) Thus, the lack of a written partnership agreement did not affect the trial court's finding that a partnership was verbally formed by Russell and Dean.

California law also provides that title to property need not be in the name of a partnership to be the property of that partnership. "Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership." (Corp. Code, § 16204, subd. (c).) Dean's testimony that he and Russell agreed to use the fire insurance proceeds and the sales proceeds of other properties to buy investment properties, then flip them in a growing real estate market supported the trial

13

court's finding that a partnership was formed, and that all the real property holdings of the parties would be the assets of that partnership.

The testimony regarding Russell and Dean's real estate investments also supported the trial court's refusal to partition or quiet title in Russell to the Cedar Glen and Yucaipa properties. Because these properties were found to belong to the partnership, the court properly declined to quiet title to them in Russell, or to determine that they were owned by Russell, Dean, and Kylene as tenants in common and partition them by sale.

As far as we can tell, based on the appellate record, the real estate investment partnership the trial court found to exist between Russell and Dean is still in effect. One would assume, given the record, that the partnership is unlikely to have a long and productive life. But to this point, the parties have neither themselves dissolved the partnership nor sought assistance by the courts to do so. Issues of return of capital contributions and full and complete accountings will be resolved at that time, and the lack of such procedures at this time is not fatal to the judgment. At this point, the trial court has properly ruled on the issues before it, and its judgment is supported by substantial evidence.

III.

*DEMURRER TO THE FIRST AMENDED COMPLAINT*

Russell argues the trial court erred by sustaining the demurrer to the first amended complaint without leave to amend. We review Russell's claim de novo. (*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1264.) "When reviewing a judgment dismissing a complaint after a successful demurrer, we assume the complaint's properly pleaded or implied factual allegations are true, and we give the complaint a reasonable interpretation, reading it in context. [Citation.] We also consider judicially noticeable matters. [Citation.] If we see a reasonable possibility that the

14

plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend. If we determine otherwise, then we conclude it did not. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

The demurrer was addressed to the two causes of action remaining in the first amended complaint—intentional and negligent infliction of emotional distress.[4] The first amended complaint alleged Dean and Kylene mishandled Russell's money and failed and refused to provide money to him from his own retirement funds, causing emotional harm to Russell who was forced to live in poverty and without appropriate medical care.

The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.) "[T]here is no independent tort of negligent infliction of emotional distress. [Citation.] The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." (*Id.* at p. 984.)

In its minute order sustaining the demurrer to the first amended complaint, the trial court wrote: "Although Plaintiff was granted leave to amend after Defendants' motion for judgment on the pleadings as to these two claims, nothing in the FAC states

_____

[4] Originally, the first amended complaint also included causes of action for negligence, professional negligence, constructive fraud, and elder financial abuse and neglect. After Dean and Kylene filed a motion to strike those causes of action, and served a notice of motion for sanctions under Code of Civil Procedure section 128.7, Russell requested dismissal of those causes of action from the first amended complaint.

15

any new allegations or provides any substantive changes in the already litigated and discredited theories upon which Plaintiff is currently basing his NIED and IIED causes of action. This is essentially Plaintiff's second bite at the apple of attempting to properly plead these claims, yet Plaintiff has explicitly refused to acknowledge the fact that the Court has already expended considerable judicial resources in considering and rejecting the very same issues that are being alleged in the FAC. Since Plaintiff has made no attempt to affirmatively cure these causes of action, and has refused to do so, the Court Sustains Defendants' demurrer without leave to amend and dismisses the case."

On appeal, Russell does not argue that the trial court erred by concluding that the first amended complaint was not substantively different from the original complaint, the facts and issues of which had been determined against Russell in the bench trial. Rather, Russell argues that the proposed second amended complaint, which was before the court in connection with the motion for leave to file the second amended complaint, shows he had a reasonable possibility of curing the defects in the complaint by amendment. We therefore conclude the trial court did not err by sustaining the demurrer, and turn to the separate issue of the trial court's denial of the motion for leave to file a second amended complaint.

IV.

*DENIAL OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT*

Russell argues the trial court erred by denying his motion for leave to file a second amended complaint. We review Russell's claim for abuse of discretion. (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

The second amended complaint would have alleged causes of action for negligence; negligent and intentional infliction of emotional distress; constructive fraud; and elder financial abuse, neglect, mental suffering, and abandonment. Russell argues that the proposed second amended complaint alleges facts and issues regarding Dean's

16

"higher duty" to Russell, based on Dean's position as Russell's attorney and real estate broker, which allegations were not previously pleaded in, or adjudicated by, the trial court.

Leave to file an amended pleading may be denied where the party seeking amendment has been dilatory and the delay has prejudiced the opposing party. (*M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012) 202 Cal.App.4th 1509, 1534.) In this case, the parties proceeded through an entire trial with no mention of an attorney-client relationship or real estate broker-client relationship between Russell and Dean. Russell's motion for leave to file a second amended complaint did not provide any explanation why he did not assert the alleged professional relationships with Dean earlier. The proposed amendment would allege new facts requiring additional discovery. (See *Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, 693-694 [the defendant lost in the first trial; on remand after appeal, trial court did not abuse its discretion in denying leave to amend to assert different defense on retrial because the defendant offered no explanation for the delay in asserting the new defense, the new defense contradicted the defendant's position in the first trial, and the new defense would have required additional discovery].) The trial court did not abuse its discretion in denying the motion for leave to file a second amended complaint.

The trial court denied the motion for leave to file a second amended complaint on the ground the new causes of action were barred by the doctrine of res judicata. Res judicata would not apply under these circumstances, as there was no final judgment in a prior lawsuit. "'"'Res judicata' describes the preclusive effect of a final judgment on the merits." [Citation.] It "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." [Citation.] Under the doctrine of res judicata, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." [Citation.]' [Citations.] "'"Res judicata precludes piecemeal litigation by splitting a

17

single cause of action or relitigation of the same cause of action on a different legal theory or for different relief.'"'" [Citation.] [¶] Res judicata bars a cause of action that was or could have been litigated in a prior proceeding if '(1) the present action is on the same cause of action as the prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding. [Citation.]' [Citation.]" (*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1527.) "The doctrine of res judicata applies only to judgments and orders that are final in the sense that no further judicial act remains to be done to end the litigation. Intermediate determinations, such as rulings on motions and interlocutory orders, are not conclusive. [Citations.]" (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 363, p. 985.)

At the time the motion for leave to file a second amended complaint was ruled on, there was no final judgment in the case. The court's ruling granting the motion for entry of judgment as to the causes of action for constructive fraud and elder financial abuse was not final, and was subject to modification. The order sustaining the demurrer as to the causes of action for negligent and intentional infliction of emotional distress, which was entered at the same hearing at which the court ruled on the motion for leave to file the second amended complaint, was similarly not a final judgment or judgment of dismissal. Res judicata was not a proper ground for denying the motion for leave to file a second amended complaint.

However, the law prohibits a party from relitigating issues in one portion of a trial, which were decided in an earlier part of a trial. "Just as the parties are bound by collateral estoppel where issues are litigated in a prior action, so, too, do issues decided by the court in the equitable phase of the trial become 'conclusive on issues actually litigated between the parties.' [Citation.] . . . [A] form of quasi-collateral estoppel occurred here; the prior disposition of the related claims by the court in equity estopped [the plaintiff] from relitigating the already determined issues in his claims at law."

18

(*Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1244.) The causes of action for constructive trust and elder financial abuse were litigated in the bench trial, and quasi-collateral estoppel prevented them from being tried again.

Russell does not provide any authority for his position that some fiduciary duties are "higher" than others. The trial court found a fiduciary duty existed between Russell and Dean, and Dean did not breach that fiduciary duty. Even if Russell were to amend his complaint to add allegations regarding Dean's fiduciary duty to him based on Dean's role as an attorney or real estate broker, Russell would not be able to make out a claim for breach of that duty.

Russell relies on the State Bar Rules of Professional Conduct, rule 3-300, which provides: "A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: [¶] (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and [¶] (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and [¶] (C) The client thereafter consents in writing to the terms of the transaction of the terms of the acquisition." A violation of a rule of professional conduct does not itself create a civil cause of action. (Rules Prof. Conduct, rule 1-100(A) ["These rules are not intended to create new civil causes of action. Nothing in these rules shall be deemed to create, augment, diminish, or eliminate any substantive legal duty of lawyers or the non-disciplinary consequences of violating such a duty."].)

19

DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.